# CV 14    4764

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

DEXTER HAUGHTON,

                                        **COMPLAINT**

                                        **ECF Case**

                    Plaintiff,

        vs.

The CITY OF NEW YORK, POLICE OFFICERS
JAMES HAVILAND, Shield # 29414,
MICHAEL O'DONNELL, Shield # 04255, and
SERGEANT MICHAEL REINECKE, Shield # 9368          **JURY TRIAL DEMANDED**
in their individual and official capacities,

                    Defendants.
--------------------------------------------------------x

Plaintiff Dexter Haughton, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      This civil rights action arises from the unlawful stop, verbal menacing, and

malicious abuse of power perpetrated against Dexter Haughton ("Plaintiff") by three

NYPD officials, who bullied Plaintiff outside his home, outrageously exceeding their

authority for no good reason.  Plaintiff asserts constitutional claims pursuant to 42 U.S.C.

§ 1983 ("Section 1983") against the individual defendants for unreasonable search and

seizure, excessive detention, excessive force, failure to intervene, and a *Monell* claim

against the City of New York for the same constitutional violations.  Plaintiff seeks

compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant

to applicable state and federal civil rights law.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3.     Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district and Plaintiff resides in this district.

## JURY DEMAND

4.     Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5.     Plaintiff Dexter Haughton is an African-American male, and at all relevant times a resident of the City of New York, Kings County, in the State of New York.

6.     The individually named defendants Police Officer James Haviland (Shield #29414), Police Officer Michael O'Donnell (Shield #9368), and Sergeant Michael Reinecke (Shield #4255) (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7.     Upon information and belief, on the date of the incident giving rise to this complaint, the individual defendants were assigned to the 63rd Precinct in Brooklyn.

8.     Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law,

2

in the capacity of an officer, employee, and agent of defendant City of New York

("Defendant City").

9.     Defendant City is a municipality created and authorized under the laws of

New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD,

which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

10.     Plaintiff did not serve a Notice of Claim on the Comptroller of the City of

New York within ninety days of the incident.

11.     This action has been commenced within one year and ninety days after the

occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

12.     On July 17, 2013, around 11:30 AM, Plaintiff parked his Toyota in an

available space across from his house, located at 1228 East 51st Street in Brooklyn, NY,

where Plaintiff has been living for over fifteen years.

13.     Plaintiff had been doing nothing unlawful or suspicious.  He was returning

from a physical workout session, as he tried to get in shape to join the Army.

14.     While Plaintiff was parking, an unmarked NYPD car pulled up to Plaintiff's

car. The individual defendants, wearing plain clothes, got out of the car and approached

Plaintiff, who had shut off the car and was standing outside, doing absolutely nothing

wrong.

15.     The individual defendants, acting on a foul hunch, not liking the way Plaintiff

rolled up his window, with no concern for Plaintiff's freedom or dignity, surrounded

Plaintiff and barked a series of scattered and baseless questions: "Who's car is this? Are you blocking this driveway? Are these tints too dark? Where are you driving papers?"

16. Plaintiff answered the individual defendants' questions truthfully, denying all wrongdoing; and complying with their demands, he gave them his New York State driver's license, registration, and insurance documents, all good and valid.

17. Indeed, Plaintiff's driving documents showed the very address the individual defendants were stopping and harassing Plaintiff in front of: 1228 51st Street.

18. Upon seeing these documents, the Officers had no basis whatsoever to continue their aggressive inquiries, yet they continued, behaving unprofessionally and maliciously, getting close to Plaintiff's face and making gratuitous comments like "driving is a privilege."

19. Plaintiff asked several times why he was being stopped and questioned, repeatedly insisting that he had no criminal record and had done "nothing wrong," but the individual defendants ignored his valid questions and his obvious innocence.

20. To demonstrate his respect for authority, Plaintiff, who was wearing an Army shirt, pleaded with the individual defendants that he wanted to join the Army and was taking active steps like going to the Army office – in fact, he just came from an Army workout – to which one of the individual defendants, who was wearing a Brett Favre jersey, replied "Why would the Army accept someone like you?"

21. Knowing that this verbal abuse was unacceptable, Plaintiff took out his phone to record the encounter, but one of the individual defendants grabbed Plaintiff's phone and threw it on the trunk.

4

22.     During the encounter, the individual defendants lightly shoved Plaintiff and contemptuously threw his driving documents in the back seat, scattering them on the floor.

23.     At no point during this encounter did Plaintiff do anything wrong or display any aggression.  He remained calm and composed despite the outrageous abuse and rudeness of these individual defendants.

24.     Plaintiff did raise his voice in order to be heard and witnessed.

25.     Plaintiff's brother, Scott Haughton, with whom Plaintiff lives, observed what was happening on the street and began recording the encounter from their home.

26.     Perhaps seeing Plaintiff's brother, the individual defendants turned away from Plaintiff and walked back to their car.

27.     As they did so, Plaintiff asked for their badge numbers, to which PO O'Donnell replied "9368."

28.     After this humiliating encounter, Plaintiff went to the 63rd Precinct to file a complaint.

29.     Plaintiff filed a complaint with the Civilian Complaint Review Board ("CCRB") – Case #201306407).  The outcome of the case, announced by letter on July 10, 2014, is as follows.  The CCRB Board found the claim of Discourtesy against PO Haviland to be unsubstantiated; the claim of Discourtesy against Sgt. Reinecke to be substantiated; and found that PO O'Donnell failed to prepare a Stop, Question and Frisk Report as required by Patrol Guide Procedure 2012-11.

30.     Because Plaintiff was never advised by the CCRB to consult a lawyer or any information about his rights, Plaintiff did not learn about the 90 day requirement to file a

Notice of Claim until well after the 90 day deadline had passed, thus precluding him from filing appropriate state torts such as assault and battery.

31.    As a result of the individual defendants' conduct, Plaintiff suffered mental and emotional anguish, humiliation, loss of liberty, and loss of dignity.

32.    The NYPD failed to supervise and discipline the individual defendants despite their histories of misconduct and abuse of power.  Despite serious complaints made against the individual defendants, the NYPD failed to properly investigate, adjudicate, and impose discipline, ignoring the risk that they would engage in future misconduct.

33.    The NYPD's flaccid response to rogue officers constitutes an irrational custom and policy that fosters a culture of misconduct and mendacity in the NYPD.

34.    Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.  But NYPD officers often face only minor discipline or no discipline whatsoever for serious wrongdoing.

35.    One feature of Defendant City's policy and custom is the absence of a serious policy and custom:  there is no serious mechanism in place by which to effectively identify and weed out dishonest officers, even when their behavior abrogates the constitutional rights of citizens.

36.    The CCRB functions to distract and deter citizens from filing legitimate civil rights lawsuits against NYPD officers, allowing the City to save money under the guise of justice.  The CCRB falsely promises to redress the aggrieved citizens' complaints against the police, but the CCRB's findings are no more than recommendations that the

NYPD routinely ignores. By enabling police misconduct to cost the City less money, the CCRB promotes that which it purports to correct.

37.     Knowing that the CCRB exists to deter lawsuits – which lawsuits would have a greater positive impact on police behavior than mere recommendations – the City has not only turned a blind eye towards systemic police misconduct, but has falsely represented its interest in civil rights and liberties.

38.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

> a.   Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;
>
> b.   Severe emotional trauma, distress, degradation, and suffering;

### SECTION 1983 CLAIMS

### FIRST CLAIM

#### Deprivation of Federal Civil Rights Under Section 1983

39.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

40.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

41.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

7

42.    The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

43.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### Illegal Stop, Search, and Seizure Under Section 1983

44.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

45.    By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures.

46.    As detailed above, the individual defendants intentionally stopped, questioned, and detained Plaintiff without reasonable suspicion, and without privilege or consent.

47.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Excessive Force Under Section 1983

48.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

49.     By the actions described, the individual defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from excessive and unreasonable force.

50.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

51.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

52.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

53.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

54.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Municipal Liability Under Section 1983

55.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

56.     By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment rights through its official policy and custom of having weak disciplinary

measures for NYPD officers who have histories and propensities of abuse of power; a policy and custom of failing to adequately investigate and punish misconduct, which encourages unscrupulous officers to deprive citizens of rights.

57.     By failing to seriously investigate and truly assess the individual defendants' abuses of power, and by failing to appropriately supervise and discipline them, the NYPD tacitly endorsed their reprehensible and disordered behavior, empowering them to continue such behavior.  By continuing to allow the individual defendants – and other potentially malicious, dishonest, rogue officers – the power to, among other things, carry a gun, make arrests, and initiate criminal charges against New Yorkers, the Defendant City has exhibited deliberate indifference to the safety, well-being, and rights of New Yorkers.

58.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the damages and injuries hereinbefore alleged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

   a.     An order awarding compensatory damages for Plaintiff Dexter Haughton in an amount to be determined at trial;

   b.     An order awarding punitive damages in an amount to be determined at trial;

   c.     A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

10

d.     Such other and further relief as this Court may deem appropriate.

DATED:        August 8, 2014
              New York, New York

              CYRUS JOUBIN, ESQ.
              88 Pine St., 14th Fl., Ste. Milstein
              New York, NY 10005
              (703) 851-2467
              joubinlaw@gmail.com
              Attorney for Dexter Haughton

11